UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

### Norfolk Division

| | |
|---|---|
| **Jesús Mancillas**<br><br>　　　Plaintiff,<br><br>　v.<br><br>**Executive Landscape, Inc.**<br>a Virginia corporation,<br><br>　　　Serve: Joshua Morin, Registered Agent<br>　　　　　　5604 Woodgreen Rd.<br>　　　　　　Virginia Beach, Va. 23455<br><br>**Joshua Morin**<br><br>　　and<br><br>**John Gibson,**<br><br>　　　Defendants | Jury Trial Demanded<br><br><br>Case No.: **2:19-cv-429** |

## COMPLAINT

### Preliminary Statement

1. Plaintiff Jesús Mancillas brings this case against his former employers: Defendants Executive Landscape, Inc., Joshua Morin, and John Gibson. In the great majority of his workweeks, Mancillas performed over 40 hours of work. But Defendants never paid him the time-and-a-half overtime premium required by the federal Fair Labor Standards Act. In fact, Defendants paid him using a scheme meant to conceal the fact that they were violating federal overtime law. Mancillas now seeks relief from this Court, as detailed below.

1

## Jurisdiction and Venue

2. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question).

3. The Court has personal jurisdiction over Defendant Executive Landscape because (1) it is a Virginia corporation and has its headquarters in Virginia; (2) it transacts business in Virginia and contracts to supply services in Virginia, including the labor that Mancillas performed in Virginia and (3) as Mancillas's employer, Executive Landscape's acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

4. The Court has personal jurisdiction over Defendant Joshua Morin because (1) he is a Virginia resident and (2) as Mancillas's employer, Morin's acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

5. The Court has personal jurisdiction over Defendant John Gibson because (1) he is a Virginia resident and (2) as Mancillas's employer, Gibson's acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

6. Venue is proper in the Eastern District of Virginia because all Defendants reside in Virginia Beach, and because a substantial part of the events or omissions giving rise to Mancillas's claims occurred in Virginia Beach. *See* 28 U.S.C. § 127(a) and (c); 28 U.S.C. § 1391(b)(1)–(2). The Norfolk Division is the proper division for the same reason. *See* Local Rule 3(B)(3).

## PARTIES

7. Plaintiff Jesús Mancillas is an adult resident of Virginia.

8. Defendant Executive Landscape, Inc. is a Virginia corporation.

9. Defendant Joshua Morin is an adult resident of Virginia.

10. Defendant John Gibson is an adult resident of Virginia.

## FACTS

### Defendants

11. Defendant Executive Landscape, Inc. is a Virginia corporation that provides landscaping services in the greater Virginia Beach area. It is registered in Virginia Beach and maintains an office there. Executive Landscape was founded in 2012. The corporate existence of Executive Landscape was automatically terminated on September 30, 2015 after the company failed to file an annual report. The corporation was reinstated on January 16, 2016.

12. Defendant Joshua Morin is Executive Landscape's president.

13. Defendant John Gibson is Executive Landscape's general manager.

14. Upon information and belief, throughout Mancillas's employment, Defendants jointly had the power to hire, fire, or discipline workers at all positions at Executive Landscape.

15. Upon information and belief, throughout Mancillas's employment, Defendants jointly had the power to direct, control, or supervise his work, whether directly or indirectly.

16. Upon information and belief, Defendants directly or indirectly set Mancillas's work schedule, or jointly had the power to do so.

17. Upon information and belief, Defendants determined Mancillas's pay rate and method of payment, or jointly had the power to do so.

18. Upon information and belief, Defendants jointly maintained all records related to Mancillas's employment.

19. Upon information and belief, Defendants jointly provided Mancillas with all tools and equipment needed to do his job.

20. Upon information and belief, Defendants' gross annual volume of business exceeded $500,000 at all relevant times.

21. Upon information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

22. Upon information and belief, at all relevant times, Defendants regularly ordered and received supplies that had traveled through interstate commerce.

**Plaintiff's Work Generally**

23. Mancillas was hired in or around early March 2015 by Executive Landscape's general manager, John Gibson. Gibson asked Mancillas if he was interested in performing landscaping work for Executive, and Mancillas said that he was. Gibson asked Mancillas what skills he had, and Mancillas told him. Gibson shared this information with Executive's president, Joshua Morin. Morin offered Mancillas a job as a landscaper at a rate of $15 an hour. Mancillas accepted the offer. He then worked for the Defendants on a full-time, year-round basis through around April 2019.

24. From the time Mancillas was hired in 2015 through around 2018, Executive employed about nine landscaping workers. The landscaping workers worked in about three teams. Mancillas worked on one of these teams. Around 2019, the company hired around three additional landscaping workers who joined the existing teams.

25. Mancillas's primary duties were planting trees, pruning, working on garden beds, installing exterior lights and fountains, and snow removal.

26. Most of Executive's clients were individual homeowners, but sometimes the company performed work for commercial properties or apartment buildings.

27. Most of Mancillas's jobs with Executive were in Virginia Beach, or sometimes in Chesapeake or Suffolk. On at least one occasion, he worked on a job in North Carolina.

28. Mancillas was supervised primarily by Defendant Gibson. Each day, Gibson would tell Mancillas where he would be working that day and when. About once a day, Gibson would come by to the job site to see how the work was going and give the workers instructions and orders about how he wanted them to perform the rest of the rest of that day's work.

29. Defendant Morin provided all the tools that Mancillas needed to perform his tasks, such as chainsaws, cutters, pruning shears, and a Bobcat utility vehicle.

30. Mancillas worked for Defendants year-round. While his daily start and stop times varied, he consistently worked for about 60 hours per week on average throughout his employment. During all of his overtime weeks, he was paid at his regular rate for all hours worked.

**Pay Practices and Pay Problems**

31. Mancillas was hired at a rate of $15 per hour. About a year-and-a-half later, he got a raise to $16.50 per hour. Around February 2019, he got a raise to $18 per hour. Defendant Morin set Mancillas's initial pay rate and approved his two raises.

32. Defendant Morin paid Mancillas his wages.

33. For about the first eight months of Mancillas's employment, Morin paid Mancillas weekly, entirely in cash. Mancillas was paid $15 per hour, regardless of how many hours he had worked that week.

34. After about eight months into his employment, Defendants' pay practices changed. Every two weeks, Morin paid Mancillas for 80 hours of work via direct deposit; Morin paid Mancillas for all such hours at Mancillas's regular rate. Every Friday, Morin paid Mancillas in cash for any hours that Mancillas had worked above 40 during that week; Morin paid Mancillas for all such hours at Mancillas's regular rate.

35. Plaintiff does not recall ever seeing notices posted in a conspicuous place explaining his wage-and-hour rights under the Fair Labor Standards Act.

## CLAIMS

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

36. At all times relevant to this action:

    a. Plaintiff Jesús Mancillas was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);

    b. Defendants were Mancillas's "employers" within the meaning of 29 U.S.C. § 203(d);

    c. Defendants "employed" Mancillas within the meaning of 29 U.S.C. § 203(g); and

    d. Mancillas was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

37. Defendants' FLSA violations were "willful" within the meaning of 29 U.S.C. § 255(a).

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

38. Jesús Mancillas worked over 40 hours in all or almost all of his workweeks, other than his last workweek. His average workweek was about 60 hours throughout his employment.

39. Defendants never paid Mancillas a time-and-a-half overtime premium for any of the hours that he worked beyond 40 in any workweek.

40. By failing to pay Mancillas an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

## **REQUESTED RELIEF**

Wherefore, Mancillas respectfully requests that this court provide the following relief:

41. Declare that no statute of limitations applies to Plaintiff's FLSA overtime claim, based on Defendants' failure to post notices in a conspicuous place explaining the Fair Labor Standards Act. In the alternative, declare that Defendants' FLSA violations were "willful" under 29 U.S.C. § 255(a), such that a three-year statute of limitations applies;

42. Award Mancillas his actual damages under the FLSA in the amount of all unpaid overtime wages, jointly and severally against all Defendants, in an amount to be proved at trial;

43. Award Mancillas an additional amount as liquidated damages equal to his unpaid overtime wages, jointly and severally against all Defendants, pursuant to 29 U.S.C. § 216(b);

44. Award Mancillas his costs and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b), jointly and severally against all Defendants; and

45. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                                              Date: August 13, 2019
Nicholas Cooper Marritz (VA Bar No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
E: nicholas@justice4all.org
*Counsel for Jesús Mancillas*